IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JODI M. KUENZI**, an individual, | Case No. 3:23-cv-00882-IM |
| Plaintiffs, | **OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **MIKE REESE**, an individual, in his official capacity as Director of the Oregon Department of Corrections; **GARY NINMAN**, an individual, in his official capacity as acting Inspector General of the Oregon Department of Corrections; **NICHOLE BROWN**, an individual, in her official capacity as Superintendent of the Coffee Creek Correctional Facility; **EMILY BRAULT**, an individual, in her official capacity as Chaplain of the Coffee Creek Correctional Facility; **DAVID CARY**, an individual, in his official capacity as Chaplain of the Coffee Creek Correctional Facility; and **DOES 1–50**, inclusive, | |
| Defendants. | |

Ray D. Hacke, Pacific Justice Institute, 317 Court St. NE, Ste. 202, Salem, OR 97301. Attorney for Plaintiff.

Shannon M. Vincent, Senior Assistant Attorney General, and Ellen F. Rosenblum, Attorney General, Oregon Department of Justice, 1162 Court St. NE, Salem, OR 97301. Attorneys for Defendants.

PAGE 1 – OPINION AND ORDER ON SUMMARY JUDGMENT

**IMMERGUT, District Judge.**

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Jodi M. Kuenzi, ECF 29, and all Defendants, ECF 31. Plaintiff is a former volunteer Christian minister at Coffee Creek Correctional Facility and brings this action under 42 U.S.C. § 1983 alleging violations of her First Amendment rights. She argues that Oregon Department of Corrections ("ODOC") Policy 40.1.13, which prohibits "demeaning references to gender," violates her rights to free speech and free exercise. Specifically, she alleges that she has been barred from serving as a volunteer minister in an ODOC prison because ODOC has interpreted "demeaning references to gender" to include a failure to use an inmate's preferred name and gendered pronouns, and Plaintiff's religious convictions include a belief that gender is an immutable biological characteristic.

This Court concludes that Defendants are entitled to summary judgment on both the free speech and free exercise claim. The challenged policy is a neutral rule of general applicability and survives rational basis review in the prison context. On the free speech claim, as a volunteer for a government-run prison, Plaintiff is not engaged in speech as a citizen on a matter of public concern, and her speech is therefore not entitled to First Amendment protection.

## STANDARDS

Summary judgment is appropriate if the record shows "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Material facts are those which might affect the outcome of the suit; a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Reasonable doubts as to the existence of [a] material factual issue are

PAGE 2 – OPINION AND ORDER ON SUMMARY JUDGMENT

resolved against the moving part[y] and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). If the moving party meets its burden, the opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997) (internal quotation marks omitted). However, at this stage, this Court does not weigh the evidence or assess the credibility of witnesses, but instead simply determines whether there is a genuine factual issue for trial. *See In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).

When simultaneous cross-motions for summary judgment are before the court, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences" before ruling on them. *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal quotation marks omitted). Either party may defeat summary judgment by showing that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, it is ultimately the court's responsibility to determine the absence of genuine issues of material fact. *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## BACKGROUND

Plaintiff has served as a volunteer Christian minister at Coffee Creek Correction Facility ("Coffee Creek") at various points over the last decade. Joint Statement of Agreed Material Facts

("Joint Statement"), ECF 28 ¶¶ 1, 12–13. Coffee Creek houses the majority of female adults in custody ("AICs") in the ODOC system. *Id.* ¶ 1.

In January 2022, ODOC adopted the latest amended version of ODOC Policy 40.1.13. ECF 28, Ex. 1. Policy 40.1.13, enacted pursuant to the federal Prison Rape Elimination Act ("PREA"), defines sexual harassment as follows:

> **Sexual Harassment:** Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one AIC directed toward another, and repeated verbal comments or gestures of a sexual nature to an AIC by a staff member, contractor or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

ECF 28, Ex. 1 ¶ II.L. This definition mirrors the definition of sexual harassment used in the PREA national standards. *See* 28 C.F.R. § 115.6 (2023).

Policy 40.1.13 requires staff and certain volunteers in ODOC facilities to participate in PREA training. *Id.* ¶ III.B.1.4. This training may be required for volunteers "based on the services they provide and level of contact they have with AICs," *id.*, and contains instruction on "how to communicate effectively and professionally with AICs, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming AICs." *Id.* ¶ III.B.1.3.

Policy 40.1.13 also requires all volunteers in ODOC facilities to sign the PREA Acknowledgement Statement. *Id.* ¶ III.K. The PREA Acknowledgement Statement provides:

> All staff[1] must be professional when addressing AICs, including appropriate conduct to transgender, intersex, and nonbinary AICs. Staff should utilize the gender pronoun the AIC identifies as or stay gender neutral when speaking or referring to an AIC. Intentional misuse or demeaning references to an AIC's gender may be considered sexual harassment.

---

[1] "For purposes of this policy staff includes . . . volunteers." *Id.* ¶ II.N.

PAGE 4 – OPINION AND ORDER ON SUMMARY JUDGMENT

ECF 28, Ex. 2.

Plaintiff states that she served as a volunteer minister at Coffee Creek until December 2022. Declaration of Jodi M. Kuenzi ("Kuenzi Decl."), ECF 30 ¶ 2. She states that she was required to undergo PREA training pursuant to Policy 40.1.13 and sign the PREA Acknowledgement Statement. *Id.* ¶ 12–13. The training materials stated:

> It is sexual harassment:
> …if you intentionally misuse pronouns, misgender, or use derogatory language toward AICs.
> …if you do not address AICs by their name and/or you do not use their preferred pronouns, for example: he/him/his, she/her/hers, or they/them/theirs.
> If you are unsure of someone's preferred pronoun, it is appropriate to ask them. The simple question is, "What pronouns do you use?" Another question is, " How would you prefer that I address you?"

Kuenzi Decl., ECF 30, Ex. A at 8; *id.* ¶ 12.

The training materials also stated that:

> Identifying a same-sex or same-gender couple as "a homosexual couple," characterizing their relationship as a "homosexual relationship," or identifying their intimacy as "homosexual sex" is extremely offensive and should be avoided. These constructions are frequently used by anti-gay extremists to denigrate gay people, couples, and relationships.

Kuenzi Decl., ECF 30, Ex. A at 7.

Kuenzi attests that she is a Christian. Kuenzi Decl., ECF 30 ¶ 2. She explains that, in accordance with her faith, she believes that "God created all persons male and female," that "a person's gender is determined by biology," and that "gender is an immutable personal characteristic." *Id.* ¶ 7a. She also states that she believes that marriage is defined to be exclusively between a man and a woman, and that sex outside of marriage—including "homosexual conduct"—is sinful. *Id.* ¶ 7b.

PAGE 5 – OPINION AND ORDER ON SUMMARY JUDGMENT

Kuenzi emailed a program services manager with ODOC, as well as the Coffee Creek chaplain, to inform them that she believed the materials in the training and the PREA Acknowledgement Statement conflicted with her religious beliefs. *Id.* ¶ 16; Kuenzi Decl., ECF 30, Ex. C. She states that ODOC has prohibited her from ministering at Coffee Creek without completing the training and signing the PREA Acknowledgment Statement. *Id.* ¶ 18.

## DISCUSSION

In response to Plaintiff's motion, Defendants argue that Plaintiff lacks standing to bring a pre-enforcement challenge because she has not been injured by the policy.[2] For the reasons discussed below, this Court concludes that Plaintiff is not bringing a pre-enforcement challenge. In order to apply to the volunteer minister program, Plaintiff is required to sign the PREA Acknowledgment Statement and complete the training. She therefore has standing to challenge those conditions on the application process.

On the merits, this Court concludes that Plaintiff cannot prevail on her Free Exercise claim because the policy is a neutral rule of general applicability. She also cannot prevail on her Free Speech claim. As a volunteer for ODOC, she is properly considered a government employee, such that the Supreme Court's *Pickering* framework applies to determine whether there is a free speech violation. Applying that framework, this Court concludes that Plaintiff's speech was pursuant to her official duties and therefore is not protected by the First Amendment.

### A. Standing

Defendants argue that Plaintiff lacks standing to challenge Policy 40.1.13 because she has not been injured by the policy. Defendants' Response in Opposition to Plaintiff's Motion for

---

[2] Defendants also object to two paragraphs of Kuenzi's declaration, arguing that these paragraphs contain hearsay. D. Resp., ECF 35 at 7. The Court overrules this objection as moot because the Court does not rely on this evidence in resolving the present motions.

Summary Judgment ("D. Resp."), ECF 35 at 3–6. Analogizing to *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010), Defendants argue that Plaintiff has failed to establish "a credible threat of adverse government action based on a violation of ODOC's PREA Policy." *Id.* at 6.

The standing inquiry asks "whether the litigant is entitled to have the court decide the merits of the dispute." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (internal quotation marks omitted). To establish standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In the First Amendment context, the Supreme Court "has dispensed with rigid standing requirements." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (internal quotation marks omitted). A plaintiff must nonetheless show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). At the summary judgment stage, a plaintiff need only show "there is a genuine question of material fact as to the standing elements." *Truth v. Kent Sch. Dist.*, 524 F.3d 957, 965 (9th Cir. 2008) (internal quotation marks omitted).

Defendants insist that Plaintiff cannot bring a claim based on a "conjectural or hypothetical" injury. *See* D. Resp., ECF 35 at 2. Throughout their motion, Defendants assert that Plaintiff is raising a pre-enforcement challenge to the policy. *Id.* at 4–6. This Court does not agree with Defendants' characterization of Plaintiff's theory of injury.

PAGE 7 – OPINION AND ORDER ON SUMMARY JUDGMENT

This Court understands Plaintiff's theory of injury as a form of competitor standing.[3] *See Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020); *Bras v. Cal. Pub. Util. Comm'n*, 59 F.3d 869, 873–74 (9th Cir. 1995). This doctrine allows a plaintiff who is "able and ready" to apply for a government program, but who is excluded because of an allegedly unconstitutional requirement, to establish a concrete and particular injury-in-fact sufficient to litigate the constitutionality of the requirement. *See Carney v. Adams*, 141 S. Ct. 493, 502–03 (2020); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).

Here, Plaintiff argues that the policy denies her the opportunity to serve as a volunteer minister by conditioning that opportunity on signing a form that she cannot sign because of her religious beliefs. For purposes of the standing analysis, this Court assumes that she would prevail on the merits of her First Amendment claim. *See Meese v. Keene*, 481 U.S. 465, 473 (1987) ("Whether the [policy] in fact constitutes an abridgement of the plaintiff's freedom of speech is, of course, irrelevant to the standing analysis." (internal quotation marks omitted)). Applying the doctrine of competitor standing, the Court concludes that Plaintiff has shown that she has standing to proceed to the merits.

Plaintiff's declaration states that she served as a volunteer minister from 2011 through 2022, but has been "unable" to continue in that role because of the allegedly unconstitutional impediment. Kuenzi Decl., ECF 30 ¶¶ 2, 18. The context here suggests that she is "able and

---

[3] These cases typically involve equal protection claims alleging discrimination in hiring or contracting—hence the doctrine's name—but "the standard is not limited to that context." *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 206 n.3 (3d Cir. 2021). The Ninth Circuit has recognized that the denial of a volunteer position based on protected speech is as "equally egregious in the eyes of the Constitution" as the loss of a job or contract. *Hyland v. Wonder*, 972 F.2d 1129, 1135 (9th Cir. 1992).

ready" to serve if the impediment—the requirement to sign the PREA Acknowledgment Statement and complete the training—is removed. *Cf. Carney*, 141 S. Ct. at 501 (finding that "the context offer[ed the plaintiff] no support" because it did not suggest an "actual desire" to apply). It is unclear from the record whether Plaintiff submitted an application, but she need not have done so to establish standing. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977) ("When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.").

A challenge based on competitor standing is not a pre-enforcement challenge; rather, it is a challenge to the selection process for a government program. Defendants' efforts to analogize this case to *Lopez* is unpersuasive for that reason. Plaintiff does not state that she fears ODOC may enforce its policy against her at some point in the future. Instead, she alleges that she is presently barred from participating in the volunteer minister program because of her religious beliefs. This is sufficient to establish an injury-in-fact and proceed to the merits of the summary judgment motions.

**B. Free Exercise Claim**

Plaintiff argues that the challenged policy violates the Free Exercise Clause of the First Amendment. Pl. Mot., ECF 29 at 9–14. The Court concludes that the policy is a neutral law of general applicability and that the policy survives rational basis review. Plaintiff's free exercise challenge therefore fails.

The Ninth Circuit has outlined two preliminary criteria for a religious claim to merit protection under the Free Exercise Claim. First, the belief must be "sincerely held," and second, the claim must be "rooted in religious belief, not in 'purely secular' philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Defendants do not challenge the sincerity of

PAGE 9 – OPINION AND ORDER ON SUMMARY JUDGMENT

Plaintiff's belief, and the undisputed evidence shows that this belief is rooted in her Christian faith. *See* Kuenzi Decl., ECF 30 ¶ 7.

With those criteria satisfied, this Court's analysis next turns to the challenged government policy in question. The Free Exercise Clause, which applies to Defendants through the Fourteenth Amendment, "protect[s] religious observers against unequal treatment" by prohibiting laws that discriminate against religious beliefs or regulate religious conduct. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458, 461 (2017) (internal quotation marks omitted). Laws that impose a burden on religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable. *Emp. Div. v. Smith*, 494 U.S. 872, 877–78 (1990).[4] In evaluating a Free Exercise claim, the initial inquiry is whether the challenged law is neutral or generally applicable, which are interrelated characteristics. *See Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). A law that is not neutral or generally applicable must survive strict scrutiny, while a neutral and generally applicable law is subject only to rational basis review. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76 (9th Cir. 2015).

Defendants argue that ODOC's policy is a neutral rule of general applicability. Defendants' Motion for Summary Judgment ("D. Mot."), ECF 31 at 7. Defendants characterize the policy as "dictat[ing] no terms and prescrib[ing] no views" because people with a religious

---

[4] This Court notes that *Smith* has been subject to significant criticism. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1883 (2021) (Alito, J., joined by Thomas and Gorsuch, JJ., concurring in the judgment) (describing *Smith* as "fundamentally wrong" and "ripe for reexamination"); *id.* at 1882 (Barrett, J., joined by Kavanaugh, J., concurring) ("[T]he textual and structural arguments against *Smith* are more compelling."); Petition for a Writ of Certiorari, *Apache Stronghold v. United States*, No. 24-291 (U.S. Sept. 13, 2024). But *Smith* remains binding law until overturned by a decision of the U.S. Supreme Court. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997).

PAGE 10 – OPINION AND ORDER ON SUMMARY JUDGMENT

objection to the use of an AIC's preferred pronoun may still refer to the AIC in gender-neutral language or by name. *Id.* at 6–7. Plaintiff responds by arguing that the policy is neither neutral nor generally applicable. Plaintiff's Response in Opposition to Summary Judgment ("Pl. Resp."), ECF 33 at 8.

Plaintiff brings facial and as-applied challenges to Policy 40.1.13. Pl. Mot., ECF 29 at 17. In evaluating Plaintiff's challenge, this Court begins with the text of the policy, but the Supreme Court has also stated that the neutrality inquiry must look beyond the text to examine the policy's operational effects. *Lukumi*, 508 U.S. at 534. While governments are obviously forbidden from openly discriminating against religious practice, they likewise may not enact facially neutral laws that "attempt to target religious practices through careful legislative drafting," *Stormans*, 794 F.3d at 1076, a practice known as "religious gerrymander[ing]." *Id.*; *Walz v. Tax Comm'n*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring).

On its face, the challenged policy is neutral because it neither "infringe[s] upon [n]or restrict[s] practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. It makes no reference to religion, nor to any religious practice, conduct, belief, or motivation. Plaintiff alleges that her religious beliefs conflict with the policy, *see* Pl. Mot., ECF 29 at 9, 13, but an "incidental" burden on religious belief is not enough under *Smith*. 494 U.S. at 878. To demonstrate a lack of neutrality, Plaintiff must show that the policy singles out religion for unequal treatment, *Lukumi*, 508 U.S. at 538, "passes judgment upon or presupposes the illegitimacy of religious beliefs and practices," *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1731 (2018), or that the process of its enactment otherwise contains evidence of hostility to religious belief or practice. *See, e.g.*, *Lukumi*, 508 U.S. at 524–28. Plaintiff does not do so, and the Court is unable to discern any facts in the record that would

PAGE 11 – OPINION AND ORDER ON SUMMARY JUDGMENT

suggest the policy's enactment was motivated by a "clear and impermissible hostility toward the sincere religious beliefs" professed by Plaintiff. *Masterpiece Cakeshop*, 138 S. Ct. at 1729. This Court therefore concludes that the policy is facially neutral.

The policy is also generally applicable. A law is generally applicable if it does not selectively "impose burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543. A policy may fail this requirement if it is underinclusive, prohibiting "'religious conduct while permitting secular conduct that undermines the government's asserted interests,' or if it provides 'a mechanism for individualized exemptions'" that is unavailable to religious objectors. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021)); *see, e.g.*, *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam) (underinclusiveness); *Sherbert v. Verner*, 374 U.S. 398, 408–09 (1963) (system of exemptions). The undisputed evidence shows that the policy here applies with equal force to all ODOC staff and volunteers regardless of their beliefs, does not distinguish between secular and religious objections that staff and volunteers may have to its requirements, and does not provide for exemptions. Plaintiff presents no other evidence of discriminatory animus or objective on the part of ODOC. This Court therefore concludes that the policy is generally applicable.

As a challenge to a neutral and generally applicable policy, Plaintiff's challenge to the policy is evaluated under the rational basis standard.[5] *See Stormans*, 794 F.3d at 1075–76. Under

---

[5] The Court notes that a "hybrid-rights" claim, which involves "the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech," would be subject to strict scrutiny. *Smith*, 494 U.S. at 881–82; *see, e.g.*, *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 759–60 (8th Cir. 2019) (recognizing this doctrine); *Henderson v. McMurray*, 987 F.3d 997, 1005–06 (11th Cir. 2021) (same). Plaintiff here establishes that a companion right has been violated, as discussed below, such that her Free Exercise claim could possibly fall within this exception to the rational basis test under *Smith*. *See Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999). But there is a circuit split on whether the hybrid-rights doctrine exists at all. *Compare Telescope Media Grp.*, 936 F.3d at 760, *and Henderson*, 987 F.3d at 1006, *with Pleasant View*

PAGE 12 – OPINION AND ORDER ON SUMMARY JUDGMENT

this standard, this Court must uphold the challenged policy if it is "rationally related to a legitimate governmental purpose." *Id.* at 1084.

This Court concludes that the policy is rationally related to ODOC's legitimate interest in "promot[ing] a respectful environment that reinforces prosocial norms for ODOC's AICs." Declaration of Larry Bennett, ECF 32 ¶ 11. Defendants' stated interest is legitimate. *See, e.g.*, *Prison Legal News v. Ryan*, 39 F.4th 1121, 1131–32 (9th Cir. 2022) (acknowledging similar interests are legitimate). The Court further concludes that the policy is rationally related to that interest. "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Plaintiff's briefing does not directly dispute the legitimacy of this interest or that the challenged policy has a rational relationship to this aim. Rational basis review is "not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Beach Commc'ns*, 508 U.S. at 313. The policy therefore survives Plaintiff's Free Exercise challenge.

## C. Free Speech Claim

Plaintiff also challenges the policy as an impermissible viewpoint-based limitation on her right to free speech. P. Mot., ECF 29 at 7. This Court concludes that Plaintiff's Free Speech claim, as a volunteer working in a prison environment, should be analyzed under the *Pickering* framework rather than under the public-forum standard. Applying the *Pickering* test, this Court

---

*Baptist Church v. Beshear*, 838 F. App'x 936, 940–41 (6th Cir. 2020) (Donald, J., concurring) (collecting Sixth Circuit cases rejecting the doctrine as dicta in *Smith*) The Ninth Circuit, despite previously suggesting it would recognize hybrid-rights claims, *Miller*, 176 F.3d at 1207, has since stated that there is "no binding Ninth Circuit authority deciding the issue of whether the hybrid rights exception exists and requires strict scrutiny." *See Parents for Priv. v. Barr*, 949 F.3d 1210, 1236 (9th Cir. 2020). Plaintiff does not argue that her claim falls within the hybrid-rights exception, so this Court need not address whether this exception exists or applies here.

PAGE 13 – OPINION AND ORDER ON SUMMARY JUDGMENT

concludes that Plaintiff was speaking pursuant to her official duties rather than as a citizen, and that her speech is therefore not entitled to First Amendment protection.

Traditionally, the public-forum analysis governs free speech claims brought by members of the public. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985). But a government employer "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995); *see, e.g.*, *Goodknight v. Cnty. of Douglas*, No. 6:24-cv-00088-MC, 2024 WL 3678468, at *5–7 (D. Or. Aug. 6, 2024). Claims brought by public employees are therefore evaluated under the more restrictive *Pickering* framework. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Although government employees cannot "constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens," *id.* at 568, the government can impose restrictions necessary to effectively and efficiently achieve its goals, *see Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 676 (1996).

As a volunteer minister serving in a government-operated prison, Plaintiff's speech is governed by the same standard as a public employee's. Although not herself a government employee, the Ninth Circuit has held that the *Pickering* standard applies whenever "the relationship between the parties is analogous to that between an employer and employee" and "the rationale for balancing the government's interests in efficient performance of public services against public employees' speech rights applies." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1101 (9th Cir. 2011). The Ninth Circuit has accordingly extended the *Pickering* framework to apply to a claim by a volunteer probation officer, *Hyland v. Wonder*, 117 F.3d 405, 411 (9th Cir. 1997), *amended on denial of reh'g*, 127 F.3d 1135 (9th Cir. 1997), as well as a claim by a

counselor employed by a private company providing counseling services for a municipal court, *Clairmont*, 632 F.3d at 1101–02, and claims by government contractors, *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 722 (9th Cir. 2022); *see also O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 721 (1996).

      This Court concludes that Plaintiff's relationship to ODOC is similar to the volunteer probation officer in *Hyland*, such that the *Pickering* standard should apply to evaluate her claim. *See Hyland*, 117 F.3d at 411 (applying *Pickering* to volunteer probation officer's First Amendment claim); *Mayfield v. City of Oakland*, No. C-07-0583, 2007 WL 2261555, at *4 (N.D. Cal. Aug. 6, 2007) (analyzing volunteer police chaplains' First Amendment claims under the *Pickering* framework); *Andersen v. McCotter*, 100 F.3d 723, 725 (10th Cir. 1996) (stating that *Pickering* governs volunteer's First Amendment claim). The policy Plaintiff challenges is the same policy that governs employee conduct. While the Ninth Circuit has not established a test for when a volunteer is properly considered a public employee for First Amendment purposes, *see Vejo v. Portland Pub. Schs.*, 204 F. Supp. 3d 1149, 1164 n.7 (D. Or. 2016) (noting the lack of a standard), this Court concludes that, particularly given the unique circumstances of the prison setting, Plaintiff's speech as a volunteer should be treated as equivalent to an employee's speech and evaluated under the same *Pickering* standard.

      The Ninth Circuit has distilled *Pickering* and its progeny into a sequential five-step test: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected

speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). This Court will assume without deciding that Plaintiff's speech addresses an issue of public concern.

Under *Pickering*, public employees do not speak as private citizens when they make statements pursuant to their official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (noting that speech *pursuant to* official duties is a broader category than speech that is *part of* official duties). The policy Plaintiff challenges does not purport to regulate her speech as a member of the general public; rather, it only regulates her speech at Coffee Creek, and then only when she is serving in her capacity as a volunteer minister.[6] *Cf. Barone v. City of Springfield*, 902 F.3d 1091, 1100–01 (9th Cir. 2018) (holding speech was as a public employee in part because it was "on the clock" and "in a location she had access to by virtue of her position"). Plaintiff's speech in her capacity as a volunteer minister "owes its existence to [her] professional responsibilities." *Garcetti*, 547 U.S. at 421–22. Because Plaintiff was speaking as an employee and not as a private citizen, her speech falls outside the protections of the First Amendment. Her failure to satisfy the second step of the sequential five-step *Pickering* analysis "necessarily concludes our inquiry." *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961–62 (9th Cir. 2011) (holding that a court need not consider the subsequent steps of the *Pickering* analysis when a plaintiff cannot meet one of the steps).

---

[6] While it may seem unusual to think of a volunteer minister's speech as being government employee speech, the government has traditionally employed chaplains without constitutional trouble. *See Marsh v. Chambers*, 463 U.S. 783 (1983). Indeed, two such government employees are defendants in this case.

PAGE 16 – OPINION AND ORDER ON SUMMARY JUDGMENT

## CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF 29, is DENIED. Defendants' Motion for Summary Judgment, ECF 31, is GRANTED. Accordingly, the Complaint, ECF 1, is DISMISSED with prejudice.

**IT IS SO ORDERED.**

DATED this 28th day of October, 2024.

                                                    /s/ Karin J. Immergut
                                                  Karin J. Immergut
                                                  United States District Judge